BECKER, GLYNN, MELAMED and MUFFLY LLP
By: Zeb Landsman (ML 4686)
299 Park Avenue
New York, New York  10171
(212) 888-3033
Attorneys for Plaintiff
Nexus International Broadcasting, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

File Via ECF

------------------------------------------------------------X
NEXUS INTERNATIONAL             :
BROADCASTING, INC.,             :
                                :
            Plaintiff,          :
                                :     Civil Action
        v.                      :
                                :     Case No. 08-01591
SATELITES MEXICANOS,            :
S.A. de C.V.                    :     **JURY TRIAL DEMANDED**
                                :
            Defendant.          :     **AMENDED COMPLAINT**
                                :
------------------------------------------------------------X

[FEB 21 2008 U.S.D.C. S.D.N.Y. CASHIERS stamp]

Plaintiff, Nexus International Broadcasting, Inc. ("Nexus"), by its attorneys Becker, Glynn, Melamed & Muffly LLP, for its complaint alleges:

Introduction

1. Nexus is a distributor of Dominican television programming, which is bundled into a television channel called "NDTV." This is an action by Nexus for breach of contract and theft of trademark against Satelites Mexicanos S.A. de C.V. ("Satmex"), an owner and operator of communications satellites used to transmit television channels like NDTV. The contract that Satmex breached (the "Exclusive Distribution Agreement") granted Satmex the exclusive right to sell the NDTV channel to third party companies for final distribution to

television viewers. The exclusivity provision prohibited Satmex from selling Dominican television programming from any distributor other than Nexus. Under the Exclusive Distribution Agreement, advertising revenue and revenue from the sale of NDTV to third party companies was shared by Nexus and Satmex.

2. Satmex initially performed its obligations under the Exclusive Distribution Agreement by entering into a lucrative five-year contract to sell NDTV to DirecTV. The contract with DirecTV was the principal source of profit to Nexus and, as Satmex knew, essential to its viability. But Satmex subsequently permitted DirecTV to terminate the contract years before it was set to expire in violation of Satmex's duties to Nexus. Satmex admitted to Nexus that DirecTV was not contractually entitled to terminate the contract early (based on phony breach claims raised by DirecTV), but it failed to take any substantive steps to enforce the contract or prevent DirecTV from improperly terminating early. Satmex abandoned its obligations to Nexus in order to enhance its other business relationships with DirecTV.

3. After causing Nexus to lose the DirecTV contract, moreover, Satmex sought to ruin Nexus so that it could be free of the Exclusive Distribution Agreement, market its own Dominican channel in the United States, free up the satellite bandwidth occupied by Nexus's channel, and sell Dominican programming from other sources without compensating Nexus. This was done by coercing Nexus into replacing its highly rated programming with Telemicro, a single source of Dominican programming selected by Satmex. Satmex claimed that Nexus could broadcast Telemicro programming content based on a license agreement between Satmex and Telemicro. But shortly after Nexus started broadcasting Telemicro content, Satmex demanded that Nexus remove almost all Telemicro content; it based its demand on the contention that it and Nexus did not own the necessary broadcasting rights. Without viable programming, Nexus was

unable to generate enough revenue to keep NDTV on the air and suspended operations on October 26, 2007.

    4.    Within seconds after Nexus shut down NDTV, Satmex replaced Nexus's signal with its own Dominican channel (which it improperly and misleadingly called NDTV) that broadcast much of the Telemicro content that Satmex had forced Nexus to remove by pretending it was unlicensed to carry it.

Parties, Jurisdiction and Venue

    5.    Nexus is a broadcasting corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 2140 S. Dixie Highway, Suite 207, Miami, FL 33133. Nexus broadcasts programs (*e.g.* local news, local sports, local music and variety shows) that are televised in New York.

    6.    Satmex is a business organized and existing under the laws of Mexico with its principal place of business at Rodolfo Gaona 86, Piso 4, Col. Lomas de Sotelo, Mexico, D.F. 11020 Mexico. Satmex is a satellite operator. Signals from Satmex satellites can be received throughout North and South America, including New York.

    7.    This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1331.

    8.    Venue is proper in this district under 28 U.S.C. 1391(d) and because the parties agreed to litigate their disputes here.

    9.    Nexus created and developed a niche television channel consisting entirely of programs from the Dominican Republic for broadcast in the U.S. and Canada through cable and satellite distribution. The channel is called Nexus Dominican Television or NDTV.

10. Nexus acquired the programming for NDTV by purchasing the rights to programming content such as news, sports, talk shows, variety shows and sitcoms from local Dominican producers and television stations. Nexus invested significant resources in creating NDTV.

11. Satmex is a satellite operator that owns and operates several communications satellites that transmit television signals throughout the Americas. Among other things, Satmex combines channels together for distribution on regional satellite and cable networks.

12. Cable and satellite networks such as Cablevision and DirecTV enter into contracts ("Sub-Distribution Agreements") with Satmex to pick up the signals of television channels transmitted by Satmex satellites and distribute those channels directly to their subscribers.

13. One of Satmex's programming packages, Alterna TV (formerly Satmex Maximo), offers programming originating in Latin America to subscribers of local and regional cable and satellite networks in the United States. NDTV was one of the channels included in the Alterna TV package.

14. DirecTV and Cablevision are the two principal satellite and cable networks that offer Alterna TV to subscribers in the United States, including New York.

<u>Exclusive Distribution Agreement</u>

15. On or about March 30, 2005, Nexus and Satmex entered into the Exclusive Distribution Agreement.

16.     The Exclusive Distribution Agreement superseded a similar agreement between Nexus and Satmex that was entered into on or about October 17, 2003. The Exclusive Distribution Agreement expires, at the earliest, on October 16, 2010.

17.     The Exclusive Distribution Agreement included these provisions:

(a)     Nexus granted Satmex the exclusive right to transmit NDTV in the United States, Canada and Puerto Rico (the "Territory");

(b)     In exchange for its exclusive right to broadcast NDTV, Satmex was required to distribute NDTV as part of the Alterna TV package to operators of various television broadcasting systems such as cable networks and DirecTV;

(d)     Revenue from subscriptions and advertising was to be split between Satmex and Nexus (subscriptions: 35% Nexus and 65% Satmex) (advertising: 85-90% Nexus and 10-15% Satmex);

(e)     Satmex was prohibited by a non-competition clause from transmitting any Dominican program material from distributors other than Nexus for the duration of the Exclusive Distribution Agreement (the "Dominican Exclusivity Clause").

(f)     The Dominican Exclusivity Clause also prohibited Satmex from transmitting any non-Nexus Dominican program material for two years after the termination of the Exclusive Distribution Agreement.

(g)     The exclusive nature of the license imposed upon Satmex an obligation to make a good faith effort fully to exploit the license and act in the best interest of Nexus.

## The DirecTV Sub-Distribution Agreement

18.     Satmex, in accordance with its obligations under the Exclusive Distribution Agreement (and prior agreement), entered into several Sub-Distribution Agreements with satellite and cable providers to distribute NDTV directly to individual subscribers.

19.     The most important Sub-Distribution Agreement was between Satmex and DirecTV (the "DTV Agreement"), dated November 18, 2004, which gave DirecTV the non-exclusive right to distribute NDTV to subscribers of the DirecTV network.

20.     The DTV Agreement had a term of five years from the date service was commenced. In December 2004, DirecTV launched NDTV nationally.

21.     The DTV Agreement was the primary source of revenue for Nexus under the Exclusive Distribution Agreement.

22.     The hard work by Nexus in creating high quality content for NDTV paid off: by the end of the 2nd quarter, 2005, NDTV had over 800,000 subscribers, all of them through DirecTV.

23.     In April 2006, DirecTV appointed a new executive in charge of programming, who, on information and belief, was a friend of the President of Media World.

24.     Earlier, in 2005, DirecTV's main competitor, Dish Network, hired Media World to create a channel broadcasting Dominican content in an effort to compete with NDTV. That channel was called TV Dominicana.

### Satmex's Agent, Castalia, Interferes with the DirecTV Agreement

25.     Upon information and belief, Castalia Communications Corporation ("Castalia") is a corporation organized under the laws of Georgia with its principal place of business at 1532 Dunwoody Village Parkway, Suite 203, Atlanta GA 30338.

26.     Upon information and belief, Castalia is an agent of Satmex, brokering many of Satmex's agreements with regional satellite and cable providers, including the DTV Agreement.

27.     Upon information and belief, Castalia managed many of Satmex's agreements, including the DTV Agreement and the Exclusive Distribution Agreement.

28.     Upon information and belief, Castalia believed that it could use its position as an agent of Satmex and manager of the DTV Agreement to impair the value of Nexus and purchase the company at a reduced price.

29.     In May 2006, senior officers of Castalia, contacted Fernando Toledo, Director of Nexus, and threatened to have NDTV removed from DirecTV if Nexus was not sold to Castalia.

30.     Following its threats to have NDTV removed from DirecTV—Nexus's main source of revenue—Castalia offered a trivial amount to purchase Nexus: $300,000. Nexus's worth at the time far exceeded that amount. The offer was rejected.

31.     Nexus notified Satmex that its agent, Castalia, had attempted to extort Nexus into selling the company by threatening to have NDTV removed from DirecTV and made clear that the threats were compromising both the Exclusive Distribution Agreement and the DTV Agreement.

32. Castalia continued to undermine Nexus and the Exclusive Distribution Agreement. In July 2006, Satmex, Nexus, Castalia, and DirecTV met at DirecTV's offices. Upon information and belief, Castalia had intentionally misinformed DirecTV that Nexus did not own the rights to NDTV content. Consequently, at the meeting, DirecTV asserted that Nexus did not own the rights to the programming on NDTV.

33. At the meeting, Cesar Mazzotta, Director of Nexus, reaffirmed that Nexus held the rights to NDTV content. Following the meeting, a comprehensive package was sent to DirecTV detailing Nexus's rights to all NDTV programming. DirecTV did not again complain that Nexus did not own the rights to NDTV content.

34. Satmex did nothing about its agent's compromising behavior, which contributed directly to DirecTV's decision to terminate the DTV Agreement, discussed below.

35. Upon information and belief, DirecTV, like Castalia, attempted to force Nexus out of the market through a buyout by Newcom International Inc. ("Newcom"), a corporation organized under the laws of Florida. Upon information and belief, in early 2007, DirecTV approached Newcom to develop a strategy to squeeze Nexus out of the field.

### DirecTV Breaches the DTV Agreement and Seeks to Replace NDTV with TV Dominicana

36. Upon information and belief, during the First Quarter of 2007, DirecTV reached a deal with Media World to replace NDTV with two rivals of NDTV, TV Dominicana and CentroAmerica TV.

37. DirecTV sought to terminate the DTV Agreement before its term expired.

38. Starting in early 2007, DirecTV and Media World improperly reported to the Dominican TV industry that DirecTV was no longer going to carry NDTV and was going to replace it with TV Dominicana. DirecTV made these statements even though DirecTV knew there were two years left on the DTV Agreement. These communications were sent to the Dominican TV industry at large and made it very difficult for Nexus to acquire new programming for NDTV.

39. Upon information and belief, in May 2007, Toby Berlin, Vice President of programming at DirecTV, informed Satmex that DirecTV was going to terminate the DTV Agreement and replace NDTV with TV Dominicana.

40. On or about June 1, 2007, DirecTV sent Satmex a letter purporting to provide notice that Satmex was in breach of the DTV Agreement on the pretextual grounds that "the general quality and quantity of programming" of NDTV had changed. The letter further provided that under the DTV Agreement, Satmex had 30 days to cure the purported breach, after which DirecTV would terminate the agreement.

41. Shortly after receiving the DirecTV notice of breach, Satmex admitted to Nexus that the general quality of programming of NDTV had not deteriorated and that Satmex/Nexus had not breached the DTV Agreement.

42. On June 28, 2007, DirecTV stated that it intended to terminate the DTV Agreement as of July 1, 2007, 30 months before the DTV Agreement was set to expire.

43. On June 29, 2007, Satmex responded by letter to DirecTV's notice that it intended to terminate the DTV Agreement as of July 1, 2007, writing that "in the event the

announced suspension of the transmission of NDTV's signal by DirecTV does take place, it will have to be considered a breach of contract imputable exclusively to DirecTV."

Satmex's Breach of the Exclusive Distribution Agreement

44. Despite strong language by Satmex, and its admission that DirecTV had breached the DTV Agreement, Satmex failed to comply with its obligations to Nexus to challenge DirecTV because it did not wish to upset its business relationship with DirecTV.

45. DirecTV offers many channels besides NDTV that are carried on Satmex satellites to DirecTV subscribers throughout North America at substantial profit to Satmex.

46. The revenue Satmex earned from DirecTV under the DTV Agreement represented only a fraction of the total revenue received by Satmex from DirecTV.

47. Upon information and belief, Satmex made the decision not to enforce its rights against DirecTV under the DTV Agreement because Satmex did not wish to do anything to jeopardize its relationship with DirecTV, one of its biggest business partners.

48. Upon information and belief, Satmex sacrificed NDTV in order to remain on good terms with DirecTV.

49. Upon information and belief, Satmex received other compensation, such as goodwill and a promise from DirecTV that it would carry other Satmex channels if Satmex allowed DirecTV out of the DTV Agreement. None of the benefits Satmex received by allowing DirecTV to breach the DTV Agreement, at tremendous harm to Nexus, was shared with Nexus.

50. Satmex, by choosing not to enforce its rights under the DTV Agreement, breached its good faith duty to exploit its exclusive license to market and broadcast NDTV under the Exclusive Distribution Agreement.

51.     Satmex further breached the Exclusive Distribution Agreement by informing Nexus that it would not support Nexus should Nexus assert its rights under the DTV Agreement as a third party beneficiary.

52.     On or about September 28, 2007, Nexus sent notice to Satmex that it had breached the Exclusive Distribution Agreement and requested a plan to cure. Satmex did not make or communicate any effort to cure.

### Satmex's Further Efforts to Ruin Nexus and Extricate Itself from the Exclusive Distribution Agreement

53.     Upon information and belief, the Exclusive Distribution Agreement was an atypical agreement from Satmex's perspective. Satmex generally owns or controls the channels offered on Alterna TV and transmitted on its satellites. Thus, Satmex does not typically share revenue from subscriptions and advertising in the same proportions that it must with Nexus under the Exclusive Distribution Agreement.

54.     Upon information and belief, Satmex entered into such an atypical agreement with Nexus because the marketability of a channel broadcasting Dominican television in the Territory was unknown and, rather than invest its own money in the enterprise, Satmex decided to partner with Nexus and allow Nexus to take on most of the risk. Once NDTV proved extremely profitable, Satmex made it known to Nexus that it wanted control of the channel.

55.     Upon information and belief, after the loss of the revenue stream from the DTV Agreement, Satmex sought to ruin Nexus and force Nexus off the air in order to (a) take control of a Dominican channel (prohibited by the Dominican Exclusivity Clause), thus relieving itself from its obligation to share revenue from its Dominican station with Nexus; (b) free up the satellite bandwidth occupied by NDTV as there were more profitable (from Satmex's

perspective) uses for the satellite frequency NDTV occupied; and (c) relieve itself of the restrictions contained in the Dominican Exclusivity Clause, which prohibited Satmex from transmitting any non-Nexus Dominican content.

56.     Absent Nexus going off the air (or other breach of the Exclusive Distribution Agreement by Nexus), Satmex would be obligated to transmit the signal for the duration of the Exclusive Distribution Agreement (at least through October, 2010) and would further be prohibited by the Dominican Exclusivity Clause from transmitting non-Nexus Dominican content for the duration of the Exclusive Distribution Agreement, plus an additional two years.

57.     Accordingly, on or about June 8, 2007, Satmex sent Nexus a letter alleging that Nexus was in breach of the Exclusive Distribution Agreement by, among other things, changing the content and quality of NDTV programming.

58.     Satmex acknowledged, later that same month, that the content and quality of NDTV had in fact improved since the parties entered the Exclusive Distribution Agreement, undermining its charge of breach in the June 8 letter.

59.     Nevertheless, Satmex management pressured Nexus throughout June 2007 to add content from Telemicro, a longtime client of Satmex and Dominican affiliate of Univision.  Upon information and belief, Telemicro content was already transmitted on Satmex satellites outside the Territory.

60.     Satmex took the position that adopting Telemicro content was the only way to prevent DirecTV from terminating the DTV Agreement.  Upon information and belief,

Satmex knew that switching to Telemicro content was unlikely to save the DTV Agreement, but nevertheless demanded the change as it would facilitate the destruction of Nexus.

61. Nexus began adding Telemicro content to its programming grid in the middle of June 2007. By the end of June 2007, Nexus acquiesced to Satmex's demands and began to broadcast only Telemicro content.

62. Nexus's pre-Telemicro NDTV programming was acquired through the painstaking and arduous process of negotiating with many different local Dominican producers and television stations to obtain the license to broadcast specific shows. In order to switch to Telemicro programming, Nexus had to terminate almost every license agreement it had previously negotiated.

63. Despite Satmex's assertions that switching to Telemicro content would save the DTV Agreement, switching over to Telemicro did not prevent DirecTV from terminating the agreement.

64. In addition to strong-arming Nexus into adopting Telemicro programming, Satmex insisted that it, not Nexus, be the named party on the agreement with Telemicro ("Telemicro Agreement"), dated June 14, 2007. At the time, Satmex claimed this was done to speed up the acquisition of Telemicro content because it had a prior relationship with Telemicro. Satmex promised that it would assign the agreement to Nexus after it was memorialized. In reality, the Telemicro Agreement sounded the death knell for Nexus as Nexus no longer directly owned the license to broadcast any Dominican content.

65. Despite numerous requests from Nexus, Satmex refused to assign the Telemicro Agreement to Nexus.

66. By strong-arming Nexus into discharging its broad programming base for Telemicro programming and preventing Nexus from itself contracting with Telemicro, Satmex forced Nexus into severing almost all its connections to the Dominican television industry, making Nexus 100% reliant on Satmex and Telemicro.

67. Upon information and belief, Satmex insisted that it be the named party on the Telemicro Agreement so that, once it put Nexus out of business, it could broadcast Telemicro programming in the Territory, regardless of whether the signal derived from Nexus or from a channel run by Satmex. Accordingly, the Telemicro Agreement did not provide that the Telemicro content was for broadcast on NDTV. Rather, the agreement merely provided that Satmex acquired the rights to broadcast Telemicro content on Alterna TV.

68. In August 2007, despite Satmex's earlier insistence that Nexus replace its existing programming with Telemicro, Satmex instructed Nexus to remove the bulk of the Telemicro content, asserting that neither Satmex nor Nexus had the right to broadcast Telemicro programming despite the fact that the Telemicro Agreement allegedly conferred that right to Satmex.

69. In late August, Nexus complied with Satmex's demands (backed by threats to take NDTV's signal offline if NDTV did not remove the content) and stopped broadcasting the bulk of the Telemicro content.

70. Having dropped the bulk of the Telemicro programming, Nexus was unable quickly to secure new content of the quality it had in the past as Satmex had forced it to sever its relationship with the rest of the Dominican television industry.

71. Without marketable content, Nexus's business was severely injured. Not only had the number of subscribers to NDTV gone down (from 1,000,000 before the breach of the DTV Agreement to 150,000 at the time Nexus was forced to remove the bulk of the Telemicro programming), but as Nexus was forced to jettison nearly its entire programming grid twice in less than two months, it lost significant credibility with advertisers, producers and content providers.

72. Satmex's actions stripped Nexus of its two main sources of revenue: advertising and the DTV Agreement.

73. On or about September 28, 2007, Nexus sent notice to Satmex that it had breached the Exclusive Distribution Agreement and requested a plan to cure. Satmex made no effort to cure.

74. On or about October 25, 2007, Nexus sent notice to Satmex that NDTV would suspend broadcasting on October 26, 2007 at 12 PM EST because of the breaches by Satmex.

75. On October 26, 2007, Nexus was forced by Satmex's breaches to suspend broadcasting of NDTV. Seconds after the broadcast of NDTV was suspended, Satmex replaced Nexus's signal with its own Dominican channel, which it also called NDTV.

76. Upon information and belief, Satmex stole the name NDTV so that subscribers to cable and satellite networks that had carried Nexus's NDTV, as well as the cable and satellite networks themselves, would be unaware that there had even been a change.

77. Upon information and belief, stealing the name of Nexus's channel allowed Satmex to avoid the time and cost of notifying and reeducating subscribers about its new

Dominican channel. The piracy also allowed Satmex to avoid alerting the cable and satellite networks that had carried NDTV that they were no longer receiving the channel. Thus, Satmex was able to discretely substitute its own channel without having to renegotiate all the Sub-Distribution Agreements. Moreover, as the Sub-Distribution Agreements provided for the transmission of Nexus's channel, upon information and belief, pirating Nexus's channel name has allowed Satmex to avoid fielding claims of breach from the cable and satellite networks that had carried NDTV.

78. Satmex's Dominican channel went on the air broadcasting much of the Telemicro content that it had forced Nexus to remove.

79. Upon information and belief, Satmex was able to free up the satellite bandwidth occupied by NDTV as the Telemicro content it was now transmitting to subscribers in the Territory was already being transmitted on Satmex satellites outside the Territory.

80. Upon information and belief, Media World's Dominican channel, TV Dominicana, Nexus's former competitor, is now transmitted on Satmex satellites in breach of the Dominican Exclusivity Clause. Moreover, upon information and belief, starting on June 30, 2007, and perhaps earlier, Satmex provided satellite services to Media World for its channel Centroamerica TV. As that channel's signal originates in the Dominican Republic, transmitting the signal also violates the Dominican Exclusivity Clause.

### As And For A First Claim For Relief
### (Breach of Contract and Breach of Covenant of
### Good Faith and Fair Dealing Against Satmex)

81. Plaintiff repeats and realleges the allegations of paragraphs 1 through 80 above as if fully set forth herein.

82. Satmex's manipulation of Nexus's programming and its successful effort to put Nexus out of business following DirecTV's termination of the DTV Agreement breached its obligations under the Exclusive Distribution Agreement and further breached its covenant of good faith and fair dealing under the Exclusive Distribution Agreement.

As And For A Second Claim For Relief
(Breach of Federal Trademark Law Against Satmex)

83. Plaintiff repeats and realleges the allegations of paragraphs 1 through 82 above as if fully set forth herein.

84. Subscribers to Alterna TV in the Territory widely recognize NDTV as Nexus's channel, a channel that exclusively broadcasts Dominican programming. At its highpoint, the number of subscribers to NDTV in the Territory exceeded one million households.

85. Satmex entered numerous Sub-Distribution Agreements with cable and satellite providers who similarly recognize and indentify NDTV as Nexus's Dominican channel.

86. NDTV is a widely recognized, famous unregistered mark, as defined by statute.

87. Satmex intentionally pirated the name of Nexus's channel, NDTV, in order to trade on NDTV's reputation at great financial gain for itself.

88. Satmex, by stealing the mark NDTV, created confusion among subscribers to Alterna TV and cable and satellite providers who likely believed they were receiving (and watching) Nexus's Dominican programming channel.

89. Nexus suffered damage as a result of Satmex's intentional piracy.

90. By intentionally pirating the name of Nexus's channel, NDTV, Satmex violated U.S. trademark law (15 U.S.C. § 1051 et seq.), specifically, 15 U.S.C. § 1125.

91. Accordingly, Nexus is entitled to the relief provided under 15 U.S.C. §§ 1116-1117 and 15 U.S.C. § 1125, including injunctive relief, Satmex's profits, damages sustained by Nexus, costs of the action and attorney fees.

WHEREFORE, plaintiff demands judgment against defendant as follows:

A. On plaintiff's First Claim, for such damages as may be proved upon trial of the action, but no event less than twenty-five million dollars ($25,000,000), plus costs and disbursements.

B. On plaintiff's Second Claim, for such damages and statutory relief as may be proved upon trial of the action, which includes but is not limited to Satmex's profits, costs, disbursements, attorney fees and injunctive relief.

Dated: February 20, 2008

BECKER, GLYNN, MELAMED and
MUFFLY LLP
Attorneys for Plaintiff

By: _____
Zeb Landsman (ML-4686)
A Member of the Firm
299 Park Ave.
New York, New York 10171
(212) 888-3033