MILBANK, TWEED, HADLEY & McCLOY LLP
By:   Richard E. Rosberger (RR 1632)                           ECF Case
        Andrew Tomback (AT 9644)
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
Attorneys for Defendant and Counterclaim-Plaintiff
Satelites Mexicanos, S.A. de C.V.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
NEXUS INTERNATIONAL                                 :
BROADCASTING, INC.,                                 :
                                                    :          08 Civ. 1591 (LAP)
                          Plaintiff,                :
                                                    :
            v.                                      :
                                                    :
SATELITES MEXICANOS,                                :
S.A. de C.V.,                                       :
                                                    :
                          Defendant.                :
---------------------------------------------------------------- X
SATELITES MEXICANOS,                                :
S.A. de C.V.,                                       :
                                                    :
                   Counterclaim-Plaintiff,          :
                                                    :
            v.                                      :
                                                    :
NEXUS INTERNATIONAL                                 :
BROADCASTING, INC.,                                 :
                                                    :
                   Counterclaim-Defendant.          :
---------------------------------------------------------------- X

## DEFENDANT'S ANSWER TO AMENDED COMPLAINT
## AND COUNTERCLAIMS

        Defendant Satelites Mexicanos, S.A. de C.V. ("Satmex"), by and through its

counsel, Milbank, Tweed, Hadley and McCloy LLP, answers the Amended Complaint (the

"Complaint") of plaintiff Nexus International Broadcasting, Inc. ("Nexus") and asserts counterclaims as follows:

1.    Denies the allegations contained in paragraph 1 of the Complaint, except admits that Satmex is, among other things, an owner and operator of communications satellites used to transmit, among other things, television signals.  Satmex respectfully refers the Court to the agreement, executed by Satmex and Nexus as of March 30, 2005, relating to Satmex's right to transmit the television channel named NDTV (the "NDTV Agreement") for a full and accurate recitation of its contents.

2.    Denies the allegations contained in paragraph 2 of the Complaint, except admits that Satmex entered into a five-year contract with DIRECTV, Inc. ("DIRECTV") under which DIRECTV was granted the right to distribute NDTV to its subscribers, and further avers that Satmex performed all of its obligations to Nexus, but Nexus breached its obligations to Satmex by, among other things, failing to maintain the quality of the programming on NDTV.

3.    Denies the allegations contained in paragraph 3 of the Complaint, except admits that Nexus suspended and terminated the transmission of NDTV on October 26, 2007, and avers that upon executing a commitment letter with Corporacion de Television y Microondas Rafa, C. por A. (doing business as Telemicro), in or around June 14, 2007 (the "Telemicro Agreement"), Satmex believed that, among other things, Nexus would be able to include on its NDTV channel the programs on the Telemicro channel under the terms of the Telemicro Agreement.

4.    Denies the allegations contained in paragraph 4 of the Complaint, except admits that Satmex transmitted for distribution in the United States a channel, other than NDTV,

that was included on Alterna'TV and consisted of programs from the Dominican Republic, after Nexus unilaterally suspended and terminated the transmission of its channel.

5.    Denies the allegations contained in paragraph 5 of the Complaint, except admits, on information and belief, that Nexus is organized and existing under the laws of the State of Delaware, with its principal place of business at 2140 S. Dixie Highway, Miami, Florida 33133.

6.    Admits the allegations contained in the first sentence of paragraph 6 of the Complaint, except avers that its postal code is 11200; admits the allegations contained in the second sentence of paragraph 6 to the extent that, among other things, Satmex is a satellite operator; and denies the allegations contained in the third sentence of paragraph 6, except admits that signals from Satmex satellites can be received in parts of North and South America, including New York.

7.    Avers that the allegations contained in paragraph 7 of the Complaint purport to state a conclusion of law with respect to the Court's jurisdiction over this dispute for which no response is required.    To the extent that a response is required, denies that there is jurisdiction under 28 U.S.C. § 1331 over the Lanham Act claim.

8.    Avers that the allegations contained in paragraph 8 of the Complaint purport to state a conclusion of law with respect to the proper venue of this dispute for which no response is required.

9.    Denies the allegations contained in paragraph 9 of the Complaint, except admits that Nexus, with the assistance and support of Satmex, created and developed NDTV, which consisted exclusively of programs from the Dominican Republic.

10.    Denies the allegations contained in the first sentence of paragraph 10 of the Complaint, and denies knowledge or information sufficient to form a belief as to the allegations contained in the second sentence.

11.    Denies the allegations contained in paragraph 11 of the Complaint, except admits that (i) Satmex is, among other things, a satellite operator, (ii) it owns satellites that, among other things, transmit television signals to parts of North and South America, and (iii) it transmits channels that are part of a programming package named Alterna'TV to national satellite and cable television operators in the United States.

12.    Denies the allegations contained in paragraph 12 of the Complaint, except admits that certain satellite and cable television operators, such as DIRECTV and CSC Holdings, Inc. ("Cablevision"), respectively, have entered into agreements with Satmex that accord such operators the right to distribute certain or all the channels on Alterna'TV to their subscribers.

13.    Denies the allegations contained in the first sentence of paragraph 13 of the Complaint, except admits that certain cable and satellite television operators receive signals transmitted over Satmex's satellites of the television channels included in Alterna'TV (formerly known as Satmex Maximo), a package created by Satmex of channels originating in Latin America, that those operators then may offer to their subscribers in the United States. Satmex admits the allegations contained in the second sentence of paragraph 13.

14.    Denies the allegations contained in paragraph 14 of the Complaint, except admits that DIRECTV and Cablevision offer certain channels contained in Alterna'TV to their subscribers in the United States, including New York.

15.    Admits the allegations contained in paragraph 15 of the Complaint to the extent that the NDTV Agreement was executed as of March 30, 2005, and denies the remaining allegations therein.

16.    Admits the allegations contained in the first sentence of paragraph 16 of the Complaint to the extent that the NDTV Agreement superseded an earlier letter agreement between Satmex and Nexus, and denies the remaining allegations therein.  Satmex admits the allegations in the second sentence of the Complaint to the extent that the term of the NDTV Agreement expired on October 16, 2010, unless it was terminated earlier or Satmex chose to extend it, and denies the remaining allegations therein.

17.    Denies the allegations contained in paragraph 17(a)-(f) of the Complaint and respectfully refers the Court to the NDTV Agreement for a full and accurate recitation of its contents.  Satmex avers that the allegations contained in paragraph 17(g) purport to state a conclusion of law for which no response is required.  To the extent a response is required, Satmex denies paragraph 17(g).

18.    Denies the allegations contained in paragraph 18 of the Complaint, except admits that Satmex entered into agreements with a satellite television operator and several cable television operators relating to their distribution of NDTV to their subscribers.

19.    Denies the allegations contained in paragraph 19 of the Complaint, except admits that DIRECTV and Satmex entered into an agreement (the "DTV Agreement"), made as of November 18, 2004, and respectfully refers the Court to the DTV Agreement for a full and accurate recitation of its contents.

20.    Admits the allegations contained in the first sentence of paragraph 20 of the Complaint, and admits the second sentence to the extent that DIRECTV made NDTV available to its subscribers nationally in December 2004.

21.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, except admits that the DTV Agreement was the primary source for Nexus of subscription gross revenues, as defined in the NDTV Agreement, under the NDTV Agreement.

22.    Denies the allegations contained in paragraph 22 of the Complaint.

23.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.    Admits, on information and belief, the allegations contained in paragraph 25 of the Complaint.

26.    Denies the allegations contained in paragraph 26 of the Complaint, and avers that to the extent that such allegations purport to state a legal conclusion with respect to the relationship between Satmex and Castalia, no response is required, but to the extent a response is required, Satmex denies the allegation, except Satmex admits that Castalia assisted Satmex in marketing and promoting the channels contained on Alterna'TV to national satellite and cable operators.

27.    Denies the allegations contained in paragraph 27 of the Complaint.

28.    Denies the allegations contained in paragraph 28 of the Complaint.

29.    Denies, on information and belief, the allegations contained in paragraph 29 of the Complaint.

30.    Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint, except denies, on information and belief, that Castalia threatened to have NDTV removed from DIRECTV.

31.    Denies the allegations contained in paragraph 31 of the Complaint, except admits that Nexus told Satmex that Castalia had offered to purchase Nexus.

32.    Denies the allegations contained in the first and fourth sentences of paragraph 32 of the Complaint; denies, upon information and belief, the allegations contained in the third sentence; and admits the allegations contained in the second sentence.

33.    Denies the allegations contained in the first sentence of paragraph 33 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences.

34.    Denies the allegations contained in paragraph 34 of the Complaint.

35.    Denies, on information and belief, the allegations contained in paragraph 35 of the Complaint.

36.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint, except denies the allegations to the extent that they relate to CentroAmerica TV.

37.    Denies, on information and belief, the allegations contained in paragraph 37 of the Complaint.

38.    Denies, on information and belief, the allegations contained in paragraph 38 of the Complaint to the extent they relate to DIRECTV; denies knowledge or information

sufficient to form a belief as to the remaining allegations in the first sentence of paragraph 38 of the Complaint; and denies the allegations contained in the third sentence of paragraph 38.

39.    Denies the allegations contained in paragraph 39 of the Complaint, except admits that on or around May 31, 2007, DIRECTV informed Satmex that it was going to terminate the DTV Agreement.

40.    Denies the allegations contained in paragraph 40 of the Complaint, except admits that DIRECTV sent Satmex a letter, dated June 1, 2007, notifying Satmex of the breach of the DTV Agreement, and refers the Court to the June 1, 2007 letter for a full and accurate recitation of its contents.

41.    Denies the allegations contained in paragraph 41 of the Complaint.

42.    Admits the allegations contained in paragraph 42 of the Complaint.

43.    Admits the allegations contained in paragraph 43 of the Complaint to the extent that Satmex responded to DIRECTV's letter, dated June 28, 2007, by letter, dated June 29, 2007, denies the remaining allegations, and respectfully refers the Court to the June 29, 2007 letter for a full and accurate recitation of its contents.

44.    Denies the allegations contained in paragraph 44 of the Complaint.

45.    Denies the allegations contained in paragraph 45 of the Complaint, except admits that DIRECTV offers a small number of channels from Alterna'TV to its subscribers in North America that are transmitted over Satmex satellites, and that Satmex derives revenue therefrom.

46.    Denies the allegations contained in paragraph 46 of the Complaint, and avers that the revenue Satmex earned from DIRECTV under the DTV Agreement was a significant percentage of the total revenue received by Satmex from DIRECTV.

8

47.    Denies the allegations contained in paragraph 47 of the Complaint.

48.    Denies the allegations contained in paragraph 48 of the Complaint.

49.    Denies the allegations contained in paragraph 49 of the Complaint.

50.    Denies the allegations contained in paragraph 50 of the Complaint.

51.    Denies the allegations contained in paragraph 51 of the Complaint.

52.    Admits the allegations contained in paragraph 52 of the Complaint to the extent that Nexus sent Satmex a notice that it had purportedly breached the NDTV Agreement, and demanding a plan to cure, denies the remaining allegations contained therein, and avers that Satmex did not breach the Agreement and therefore had no duty or need to try to cure a breach, and that it was Nexus instead that materially breached the Agreement. Satmex respectfully refers the Court to the September 28, 2007 letter for a full and accurate recitation of its contents.

53.    Denies the allegations contained in paragraph 53 of the Complaint.

54.    Denies the allegations contained in paragraph 54 of the Complaint.

55.    Denies the allegations contained in paragraph 55 of the Complaint.

56.    Denies the allegations contained in paragraph 56 of the Complaint, and respectfully refers the Court to the NDTV Agreement for a full and accurate recitation of its contents.

57.    Denies the allegations contained in paragraph 57 of the Complaint, except admits that on or about June 8, 2007, Satmex sent Nexus a letter advising that, among other things, Nexus had breached the NDTV Agreement by changing the content and quality of the programming on NDTV. Satmex respectfully refers the Court to the June 8, 2007 letter for a full and accurate recitation of its contents.

58.    Denies the allegations contained in paragraph 58 of the Complaint.

59.    Denies the allegations contained in paragraph 59 of the Complaint, except admits Satmex provided satellite services to Telemicro.

60.    Denies the allegations contained in paragraph 60 of the Complaint.

61.    Denies the allegations contained in paragraph 61 of the Complaint, except admits that Nexus added programs from the Telemicro channel onto NDTV in late June 2007.

62.    Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 62 of the Complaint, and denies the allegations contained in the second sentence.

63.    Denies the allegations contained in paragraph 63 of the Complaint, except admits that DIRECTV terminated the DTV Agreement after certain programming from the Telemicro channel had been added to NDTV.

64.    Denies the allegations contained in paragraph 64 of the Complaint, except admits that Satmex was a named party to the Telemicro Agreement.

65.    Denies the allegations contained in paragraph 65 of the Complaint.

66.    Denies the allegations contained in paragraph 66 of the Complaint.

67.    Denies the allegations contained in paragraph 67 of the Complaint, and respectfully refers the Court to the Telemicro Agreement for a full and accurate recitation of its contents.

68.    Denies the allegations contained in paragraph 68 of the Complaint, except admits that Satmex requested that Nexus temporarily remove certain programs with Telemicro content from NDTV.

69.    Denies the allegations contained in paragraph 69 of the Complaint.

70.    Denies the allegations contained in paragraph 70 of the Complaint.

71.    Denies the allegations contained in paragraph 71 of the Complaint.

72.    Denies the allegations contained in paragraph 72 of the Complaint.

73.    Admits the allegations contained in paragraph 73 of the Complaint to the extent that Nexus sent Satmex a notice that it had purportedly breached the NDTV Agreement, and demanding a plan to cure, denies the remaining allegations contained therein, and avers that Satmex did not breach the Agreement and therefore had no duty or need to try to cure a breach, and that it was Nexus instead that materially breached the Agreement. Satmex respectfully refers the Court to the September 28, 2007 letter for a full and accurate recitation of its contents.

74.    Denies the allegations contained in paragraph 74 of the Complaint, and respectfully refers the Court to the October 25, 2007 service termination notice, sent by Nexus to Satmex, for a full and accurate recitation of its contents.

75.    Denies the allegations contained in paragraph 75 of the Complaint, except admits that Satmex transmitted for distribution in the United States a channel, other than NDTV, that was included on Alterna'TV and consisted of programs from the Dominican Republic, after Nexus unilaterally suspended and terminated the transmission of its channel.

76.    Denies the allegations contained in paragraph 76 of the Complaint.

77.    Denies the allegations contained in paragraph 77 of the Complaint.

78.    Denies the allegations contained in paragraph 78 of the Complaint.

79.    Denies the allegations contained in paragraph 79 of the Complaint.

80.    Denies the allegations contained in the first and third sentences of paragraph 80 of the Complaint, and admits the allegations contained in the second sentence.

## ANSWER TO FIRST CLAIM

81.     States that paragraph 81 of the Complaint purports to repeat and reallege allegations in paragraphs 1 through 80.  Satmex reasserts and incorporates by references its responses to those paragraphs.

82.     Denies the allegations contained in paragraph 82 of the Complaint.

## ANSWER TO SECOND CLAIM

83.     States that paragraph 83 of the Complaint purports to repeat and reallege allegations in paragraphs 1 through 82.  Satmex reasserts and incorporates by references its responses to those paragraphs.

84.     Denies the allegations contained in paragraph 84 of the Complaint.

85.     Denies the allegations contained in paragraph 85 of the Complaint.

86.     Denies the allegations contained in paragraph 86 of the Complaint, except admits Nexus has not registered the "NDTV" name.

87.     Denies the allegations contained in paragraph 87 of the Complaint.

88.     Denies the allegations contained in paragraph 88 of the Complaint.

89.     Denies the allegations contained in paragraph 89 of the Complaint.

90.     Denies the allegations contained in paragraph 90 of the Complaint.

91.     Denies the allegations contained in paragraph 91 of the Complaint.

92.     Avers that the final paragraphs of the Complaint, which begin with "WHEREFORE," purport to state a legal conclusion to which no response is required.  To the extent a response is required, denied.

## DEFENSES

### FIRST DEFENSE

Nexus failed to serve process properly under either the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents or other applicable international conventions on service of process.

### SECOND DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### THIRD DEFENSE

Satmex did not breach the NDTV Agreement or any covenant of good faith and fair dealing implied therein.

### FOURTH DEFENSE

Satmex did not owe any duties with respect to Nexus to enforce the DTV Agreement or any other third-party contract.

### FIFTH DEFENSE

The Complaint is barred, in whole or in part, by the equitable doctrine of estoppel.

### SIXTH DEFENSE

Nexus's claims are barred, in whole or in part, by the doctrine of waiver.   Nexus, by its actions and inactions, waived the right to pursue its claims.

### SEVENTH DEFENSE

Nexus's claims are barred, in whole or in part, by the parties' modification of the NDTV Agreement.

### EIGHTH DEFENSE

Nexus's claims are barred, in whole or in part, under the doctrine of mitigation of damages.

## NINTH DEFENSE

Nexus's claims are barred, in whole or in part, by the doctrine of election of remedies, and Nexus's failure to give notice of the breaches alleged in the Complaint.

## TENTH DEFENSE

Nexus's claims are barred, in whole or in part, because Nexus's actions frustrated the purposes of the NDTV Agreement.

## ELEVENTH DEFENSE

Nexus's claims are barred, in whole or in part, because Nexus repudiated the NDTV Agreement.  Because of Nexus's actions, the NDTV Agreement has been terminated.

## TWELFTH DEFENSE

The amount of damages, if any, claimed in the Complaint is speculative and conjectural.  The damages alleged were not the foreseeable or natural result of Satmex's alleged conduct.

## THIRTEENTH DEFENSE

Any damages suffered by Nexus should be offset by the benefits conferred upon Nexus and by the damages to Satmex caused by Nexus's material breach of the NDTV Agreement and Indemnity Agreement.

## FOURTEENTH DEFENSE

Jurisdiction under the Lanham Act is absent because Satmex did not use in commerce the alleged "NDTV" trademark following the termination of the NDTV Agreement.

## FIFTEENTH DEFENSE

Nexus does not have standing to assert its trademark claims.

## SIXTEENTH DEFENSE

Satmex did not infringe the alleged "NDTV" trademark.

## SEVENTEENTH DEFENSE

The name "NDTV" is not inherently distinctive and has not acquired secondary meaning.

## EIGHTEENTH DEFENSE

Nexus's trademark claim is barred by the doctrine of unclean hands.

## NINETEENTH DEFENSE

Plaintiff's trademark claim is barred by the doctrines of abandonment and acquiescence.

## TWENTIETH DEFENSE

Satmex has, at all times, acted in good faith.

WHEREFORE, Satmex respectfully requests that this Court dismiss, with prejudice, the claims alleged against it or that judgment be entered in favor of Satmex, with costs and attorney's fees assessed against Nexus.

## COUNTERCLAIMS OF SATMEX

Defendant Satmex asserts the following counterclaims against Nexus:

### INTRODUCTION

1.      This is an action for breach of contract, the covenant of good faith and fair dealing that inheres therein, and for a declaratory judgment, based on Nexus's failure to comply with its obligations to provide a television channel of consistent, high quality programming to Satmex, and Nexus's unilateral termination of that channel despite Satmex's earlier attempt to save it.

2.      In 2003, Satmex created a diverse package of television channels from Latin America, known as Alterna'TV, that was targeted at Hispanic audiences, principally in the United States. Satmex marketed these channels to cable and satellite television operators in the United States for distribution to their subscribers. Recognizing an opening in the market in the United States for a television channel consisting entirely of programs from the Dominican Republic, Satmex encouraged, assisted and supported Nexus in creating such a channel, which was called, among other names, NDTV.

3.      Nexus and Satmex, then, executed a definitive agreement as of March 30, 2005 (following an earlier letter agreement), under which Nexus granted Satmex the exclusive right to transmit the NDTV channel into the United States. In exchange, Satmex agreed that, for the term of the agreement (unless terminated beforehand), it would not distribute any programming from the Dominican Republic into the United States, except for those on NDTV.

4.      Satmex entered into this agreement based on Nexus's representations that it owned the license and rights for all of the programs that appeared on NDTV and that it would maintain the quality and mix of the programs on NDTV throughout the period of the agreement. Relying on Nexus's assurances, Satmex vigorously promoted the NDTV channel to cable and

satellite television operators, and entered into profitable agreements with, among others, the satellite operator DIRECTV to distribute NDTV.

5.    Shortly after Satmex executed this agreement with Nexus, however, the quality of the programs on NDTV materially declined, as NDTV lost many of its most popular programs to a competitor.  This loss of quality did not go unnoticed, as DIRECTV threatened to terminate its agreement with Satmex unless the programming on NDTV dramatically improved. Though Satmex notified Nexus of its breach, Satmex tried to salvage its relationship with Nexus. Urged by Nexus, Satmex purchased (at its own substantial expense) the right to transmit a slate of new programs, even recovering a small number of programs that Nexus had lost.  Still, based on complaints that DIRECTV stated that it had received from its subscribers over the quality of the programming on NDTV and its overall lack of confidence in Nexus, DIRECTV terminated its agreement in July 2007.

6.    Even following the loss of its lucrative contract with DIRECTV, Satmex still retained agreements with cable television operators to distribute NDTV and continued its efforts to promote the channel.  Nevertheless, Nexus, having lost a substantial source of revenue through its own breach, tried to pin the blame on Satmex, wrongly claiming that Satmex had breached their agreement.   Not making any headway on that front, Nexus then unilaterally suspended the channel in October 2007, terminating their agreement.  Satmex brings this action to recover the damages it suffered through Nexus's misconduct.

## JURISDICTION AND VENUE

7.    Satmex is a business organized under the laws of Mexico with its principal place of business in Mexico.

8.      Nexus is, on information and belief, a corporation organized under the laws of the State of Delaware with its purported principal place of business in Miami, Florida.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).  This action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Nexus because, among other things, Nexus agreed to the jurisdiction of this Court with respect to Satmex's counterclaims.

11.     Venue is proper in this District because, among other things, Nexus agreed to litigate in this District the dispute on which the counterclaims are based.

### FACTS

12.     Satmex is a Mexican company that, among other things, owns and operates satellites for the transmission of television signals.

13.     In 2003, Satmex created a television programming package of diverse content (originally called Satmex Maximo, later called Alterna'TV) aimed at the Hispanic public in the United States, that was intended to be distributed through cable and satellite television operators to their subscribers.

14.     Satmex was interested in adding a channel with content entirely from the Dominican Republic, geared toward the growing Dominican community in the United States, to its Alterna'TV package.  Spurred by Satmex's interest, in or around the middle of 2003, Cesar Mazzotta, who became the managing director of Nexus, met with employees of Satmex to discuss the possibility of his creating such a channel for Alterna'TV.  Eventually, relying on the assistance and support of Satmex, Nexus created NDTV.

18

15.    Nexus then set out to select and then to acquire the rights to the most popular Dominican Republic shows.  Upon information and belief, Nexus eventually entered into a license agreement with a television station in the Dominican Republic to secure the programming for NDTV.

## THE AGREEMENTS BETWEEN SATMEX AND NEXUS

16.    Satmex entered into three individual agreements with Nexus relating to NDTV:  the interim letter agreement, a superseding definitive agreement, and an indemnity agreement.

## The Interim Letter Agreement and the NDTV Agreement

17.    On or about October 17, 2003, Nexus and Satmex executed an interim letter agreement (the "Letter Agreement") that covered NDTV's distribution in the United States, Puerto Rico and Canada (the "Territory").   Later, the parties entered into a definitive agreement relating to NDTV (the "NDTV Agreement"), which superseded the Letter Agreement.  Under the NDTV Agreement, Nexus granted Satmex the right to transmit NDTV, via cable and satellite systems, into the Territory for the seven-year term of the Agreement.  Satmex also obtained the right to sublicense the transmission rights to NDTV to cable and satellite television companies for distribution to their subscribers.  Nexus represented that it held all the rights and licenses to the programs on NDTV.

18.    Satmex and Nexus exchanged mutual promises with respect to exclusivity. Nexus granted Satmex the exclusive right to transmit NDTV in the Territory.  Satmex agreed, in turn, not to market any Dominican channel other than NDTV in the Territory.   Because Satmex took on the obligation not to distribute any other Dominican channel in the Territory, Nexus was bound by the implied covenant of good faith and fair dealing to provide consistent programming on NDTV.

19.    In terms of revenue from the Nexus-Satmex relationship, Satmex agreed that Nexus would be entitled to 35% of the gross revenue paid by distributors to Satmex for the right to distribute NDTV.    In return, Nexus agreed that Satmex was entitled to a percentage of the gross revenue, ranging from 10% to 15%, earned by Nexus from its sale of advertising on NDTV.

20.    The NDTV Agreement provided that in the event of a default by either Nexus or Satmex, the non-breaching party would have the right to terminate the Agreement and/or sue the other party for losses or damages resulting from the default under the terms of the Agreement.

21.    Finally, to the extent that it terminated the NDTV Agreement without a material default by Satmex, Nexus was required to pay all losses and damages incurred by Satmex, except in the event that Nexus suspended the transmission of NDTV and did not transmit NDTV within the Territory for two additional years.

**The Indemnity Agreement**

22.    Satmex and Nexus also entered into an indemnity agreement (the "Indemnity Agreement"), effective as of October 17, 2003, the same date the Letter Agreement was executed.  The Indemnity Agreement expires on December 31, 2013.

23.    The Indemnity Agreement emphasized that Satmex would only include NDTV as one of the channels in the Alterna'TV package, and seek to market the channel to cable and satellite operators for distribution to their subscribers, on the condition that Nexus made certain representations and warranties.   Among these, Nexus represented and warranted that, throughout the term of the Indemnity Agreement,  the "type . . ., mix and quality of the programming [on NDTV] will remain consistent" with a representative schedule of programs

that Nexus attached as an exhibit thereto.  Nexus agreed that it would deliver a programming

schedule to Satmex on a monthly basis.

24.    The Indemnity Agreement, moreover, provided that to the extent that

NDTV contained programming that deviated from the original schedule of shows, Nexus "shall

be responsible for any loss in revenues as a result of any such non-compliant programming."

Nexus also agreed to hold Satmex harmless from any damages or losses arising out of any breach

of its representations or obligations under the Indemnity Agreement.

25.    Finally, Nexus agreed to indemnify Satmex for any and all costs and

expenses, including attorney's fees, incurred by Satmex if Satmex sought to enforce its rights

under the Indemnity Agreement, or that arose out of a breach of any representations made by

Nexus under the Agreement.

## SATMEX'S SUCCESSFUL EFFORTS TO PROMOTE NDTV

26.    Satmex devoted substantial time, effort and money to transmit and

promote NDTV, including providing costly satellite space and services for the channel.

Satmex's efforts paid off.  As a result of the strength of its marketing and promotional activities,

Satmex enlisted, at various points, the premier national satellite-based  television system operator

DIRECTV, and such major cable companies as Comcast Cable Communications, LLC

("Comcast"), Cablevision, and RCN Telecom Services, Inc. ("RCN"), to distribute NDTV to

their subscribers.

### The DTV Agreement

27.    On November 18, 2004, Satmex and DIRECTV entered into an agreement

(the "DTV Agreement").  The DTV Agreement had a five-year term starting in December 2004.

28.    Under the DTV Agreement, Satmex granted to DIRECTV the right to

distribute NDTV in the Territory via its satellite-based television system to its subscribers.

Satmex agreed to deliver NDTV from a communications satellite appropriate for the transmission of television programming and to provide at its own expense the receivers and decoders necessary for DIRECTV to distribute the channel to its subscribers.

29.     Satmex further agreed that NDTV would consist of a "mix of originally produced and licensed content . . . presented on a 24-hour per day, 7 days a week schedule, as reflected by the representative programming schedule" attached as an exhibit thereto. Satmex was also required to provide a daily programming schedule for NDTV so that DIRECTV could prepare its on-screen program guide. Crucially, Satmex warranted and represented to DIRECTV that the "general quality and quantity of programming on [NDTV] *shall not materially change* from that existing as of the date of this Agreement." (emphasis added). In exchange for receiving these distribution rights to NDTV, DIRECTV was required to pay Satmex a fixed license fee for each subscriber.

30.     DIRECTV had the right to terminate the DTV Agreement if Satmex failed to perform any material obligations under the Agreement, and to cure, or take reasonable steps to cure, such failure within thirty days of written notice. In addition, specifically with respect to the content of NDTV, DIRECTV had the right to terminate the Agreement, upon ninety days' notice, "if at any time the general quality and quantity of programming … *materially changes* from that existing as of the date of this Agreement …, as determined by [DIRECTV] in its sole discretion." (emphasis added).

## Agreements Between Satmex and Cable Television Operators

31.     Through Satmex's efforts, a large number of cable companies also entered into agreements with Satmex providing them the right to distribute NDTV to their subscribers. Of these, Comcast was the first cable operator to launch NDTV, in its New England system in

August 2006.  Following suit, Cablevision launched NDTV in May 2007.  Each of these

agreements with cable operators benefited both Satmex and Nexus.

## NEXUS'S LOSS OF CRITICAL PROGRAMMING ON NDTV LEADS TO THE TERMINATION OF THE DTV AGREEMENT

32.     In or around September 2005, Nexus first advised Satmex that it might

lose certain programming critical to the success of NDTV to one of its competitor channels.

Soon after, in November 2005, Nexus expressed its concern directly to DIRECTV executives.

Yet, other than purportedly sending a cease and desist letter to the competitor channel, Nexus, on

information and belief, took no further action to retain those programs on NDTV.  Ultimately, in

or around December 2005, Nexus discontinued the transmission of these key shows on NDTV.

33.     Both Satmex and DIRECTV volunteered to assist Nexus in obtaining new

replacement programming, and Nexus accepted this help.  Through these joint efforts, Nexus

was able to add some additional programs to NDTV's schedule.

34.     However, starting in or around May 2006, a new vice president of

DIRECTV, Aaron McNally, started to express serious misgivings about the quality of the

programming on NDTV.  Then, in March 2007, his successor, John de Armas, advised Satmex

that he too was concerned about the sharp decline in programming, and gave Satmex 30 days

within which to obtain certain top-rated rated shows that were missing from NDTV.  Satmex

conveyed these concerns of DIRECTV to Nexus.   Nevertheless, at a follow-up meeting between

DIRECTV and Satmex on April 25, 2007,  to which Nexus was invited, Nexus failed to show up

in person.  Again, DIRECTV was critical of the quality of the programming on NDTV and

demanded that certain key shows formerly on NDTV be recovered.

35.     Later, on June 1, 2007, DIRECTV advised Satmex in writing that it had

reviewed the programming schedules for NDTV and had confirmed that the "quality of

programming on the Service has materially changed from the quality of the programming on the Service as of the date of the Agreement." In particular, numerous programs that were included as part of the representative schedule in Exhibit A of the DTV Agreement were no longer shown on the channel. DIRECTV advised that not only had it received numerous complaints from its subscribers regarding the quality of the programming on NDTV, but also many of its customers had cancelled their subscriptions due to the perceived downturn in quality. The letter concluded that DIRECTV would terminate the Agreement unless the foregoing breach was cured within 30 days.

36.    On June 8, 2007, Satmex advised Nexus that, in violation of the Indemnity Agreement and the NDTV Agreement, Nexus had made substantial changes to the programming content and quality, thereby placing the DTV Agreement at imminent risk.

37.    Yet, despite Nexus's breach of the Indemnity and NDTV Agreement, as well as Nexus's cavalier attitude towards its professional responsibilities, Satmex attempted to save the DTV Agreement by addressing Nexus's and NDTV's shortcomings. Among other things, Satmex traveled to the Dominican Republic on several occasions to try to secure the programming that Nexus had lost, and expended its own funds out-of-pocket (which it had no duty to do) in an attempt to cure the breach asserted by DIRECTV and fend off the impending termination of the DTV Agreement.

38.    In particular, at Nexus's request, Satmex purchased from the owner of Telemicro (a highly popular channel in the Dominican Republic) a license to transmit in the Territory programs appearing on the Telemicro channel. In exchange, Satmex was required to pay a monthly fee of $30,000. Because of Satmex's legwork and financial commitment, Nexus had the opportunity to place these programs from the Telemicro channel onto its own NDTV

channel.  In fact, by the end of June 2007, Nexus started transmitting the Telemicro programming on the NDTV channel.  However, notwithstanding its efforts, Satmex was not able to gain back the bulk of the lost programming cited in DIRECTV's letter as evidence that Nexus's programming had markedly changed for the worse.

39.     Despite Satmex's attempts to convince DIRECTV that the programming deficiencies that DIRECTV spotted had been cured, DIRECTV insisted that the quality of the programming on NDTV had materially changed and that many of the programs previously shown on NDTV were now carried by another service on an exclusive basis.  Based on the foregoing, DIRECTV advised Satmex by letter, dated June 28, 2007, that it planned to terminate the DTV Agreement on July 1, 2007.  On July 1, 2007, as it had forewarned, DIRECTV stopped distributing NDTV to its subscribers.

## NEXUS'S SUSPENSION OF THE TRANSMISSION RIGHT TO NDTV AND TERMINATION OF THE NDTV AGREEMENT

40.     Amid complaints by DIRECTV over the quality of programming on NDTV, Satmex continued to promote the NDTV channel to cable television systems.  As stated above, Comcast and Cablevision launched NDTV in August 2006 and May 2007, respectively.  Additionally, Satmex reached agreement with such companies as RCN and TIME WARNER CABLE LLC, providing them the right to distribute NDTV, in July 2006 and September 2007, respectively.

41.     Ignoring its own failures to honor its obligations under the Indemnity and NDTV Agreements, Nexus improperly accused Satmex, by letter dated September 28, 2007, of breaching the NDTV Agreement by, among other things, purportedly failing to enforce the DTV Agreement.  Nexus further warned Satmex that Nexus's survival was in "immediate jeopardy."  Then, on October 5, 2007, Nexus again threatened Satmex that if it did not cure its purported

breach, Nexus would have "no choice but to cease operations." Nexus made these threats to Satmex even though major cable companies continued to distribute NDTV to their subscribers, generating revenue for both Satmex and Nexus.

42.    Nexus took NDTV off the air on October 26, 2007, terminating the NDTV Agreement.   On or about November 16, 2007, Satmex notified Nexus that it considered the Agreement to have been terminated.

## COUNT I
## BREACH OF THE INDEMNITY AGREEMENT

43.    Satmex re-alleges all of its allegations set forth in paragraphs 1 through 42 above.

44.    Through its failure to maintain the overall quality of the programs on its NDTV channel, Nexus materially breached the Indemnity Agreement.

45.    In addition, under the Indemnity Agreement, Nexus is required to indemnify Satmex for any and all costs and expenses, including attorney's fees, incurred by Satmex, if Satmex sought to enforce its rights under the Agreement.

46.    As a result of Nexus's breaches, Satmex has suffered damages in an amount not less than three million dollars ($3,000,000.00), not including the contractual indemnification for attorney's fees and costs.

## COUNT II
## BREACH OF THE NDTV AGREEMENT AND
## ITS IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

47.    Satmex re-alleges all of the allegations set forth in paragraphs 1 through 46 above.

48.    Nexus breached the covenant of good faith and fair dealing implied in the NDTV Agreement by failing to maintain the overall quality of the programming on NDTV.

49.     In addition, to the extent that Nexus has earned any advertising revenue from Satmex's transmission of NDTV, as alleged in Nexus's Complaint, Nexus breached the NDTV Agreement by failing to share any of such revenue with Satmex.

50.     Finally, to the extent that Nexus is transmitting or attempts to transmit any portion of NDTV into the Territory within two years of its termination of the NDTV Agreement, on October 26, 2007, Nexus has breached or will breach the NDTV Agreement.

51.     As a result of Nexus's breaches, Satmex has suffered and will continue to suffer damages in an amount not less than three million dollars ($3,000,000.00).

## COUNT III

## DECLARATORY JUDGMENT

52.     Satmex re-alleges all of its allegations set forth in paragraphs 1 through 51 above.

53.     Clause 10(g) of the NDTV Agreement, as translated, provides, in pertinent part, that Nexus "shall have the right to terminate [the NDTV Agreement] before its expiration of its Term . . . in case [Nexus] decides to suspend the transmission and commercialization of [NDTV] in the Territory, upon the condition that no portion of [NDTV] is transmitted in the Territory after such suspension for two years."

54.     Satmex seeks an order from the Court under 28 U.S.C. § 2201(a) declaring that, because Nexus has suspended the transmission of NDTV, causing the termination of the NDTV Agreement, Nexus (and any successors) are contractually obligated not to transmit any of the content of NDTV into the Territory until after October 26, 2009, two years after the termination of the NDTV Agreement.

WHEREFORE, Satmex respectfully prays for the following relief against Nexus:

(1)     Damages in an amount to be determined at trial, but in any event not less than three million dollars ($3,000,000);

(2)     A Declaratory Judgment that Nexus (and any successors) are barred from transmitting any of the content of NDTV into the Territory until October 26, 2009;

(3)     Reasonable attorney's fees and costs pursuant to the Indemnity Agreement;

(4)     Interest at the legal rate; and

(5)     Any further relief this Court deems just and proper.


Dated:  June 18, 2008
        New York, New York

                          Respectfully submitted,


                          MILBANK, TWEED, HADLEY & McCLOY LLP


                          By:_____
                          Richard E. Rosberger (RR 1632)
                          Andrew Tomback (AT 9644)
                          1 Chase Manhattan Plaza
                          New York, N.Y. 1005
                          (212) 530-5000
                          *Attorneys for Satmex*